IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal No. 4:07-CR-389-12 |
| v. | : | |
| | : | (Chief Judge Kane) |
| EARL SAMPSON, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

Before the Court are Defendant Earl Sampson's ("Sampson") motions to dismiss counts of the indictment (Doc. No. 1082), and suppress physical evidence (Doc. No. 1127). These motions are ripe for disposition. For the reasons that follow, the motions will be denied.

**I.     BACKGROUND**

On September 27, 2007, the Government filed an indictment charging Earl Sampson and other individuals with various drug trafficking crimes. (Doc. No. 1.) Specifically, Sampson was charged in Count One of the indictment with conspiring with co-defendants to distribute and possess with intent to distribute more than five grams of crack cocaine and more than five hundred grams of cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(ii), 841(b)(1)(B)(iii), and § 860(a). Counts 19 and 21 charged Sampson and co-defendant Dorothy Robinson with the substantive offenses of distribution and possession with intent to distribute crack cocaine in a protected zone within 1000 feet of public housing, and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and 18 U.S.C. § 2. On August 14, 2008, a third superseding indictment was filed, which included additional defendants and charges and expanded the time frame of the alleged conspiracy, but essentially realleged the same charges against Sampson in the same numbered counts. (Doc. No. 435.)

Defendant Sampson's part of this case was recently reassigned to this Court from Judge Thomas Vanaskie. During the course of these proceedings, Sampson has filed numerous pre-trial motions through his various attorneys, including a motion to suppress evidence (Doc. No. 302) that was denied by Judge James McClure, Jr. over two years ago (Doc. No. 373). Trial in this matter is currently set for June 28, 2010.

## II. MOTION TO DISMISS COUNTS IN THE INDICTMENT

Sampson contends that Counts of the indictment should be dismissed or that the Government be forced to choose which Counts to proceed under because the offenses alleged in Counts 19 and 21 of the indictment are multiplicitous to Count 1. Sampson appears to make two arguments for dismissal in his brief in support. As the Government did in its opposition to the motion, the Court will address these arguments separately.

### A. Personal Transfer of Controlled Substance

Sampson first argues that a drug distribution charge under 21 U.S.C. § 841 is intended "to punish the actual person who physically transfers possession of a controlled substance to another person." (Doc. No. 1084 at 2.) He suggests that the Government's proof in this case "shows a complete absence of any evidence that Defendant, EARL SAMPSON, physically delivered any controlled substances to anyone on the dates listed in those counts." (Id. at 3.) The Government argues that it is clear that Sampson did not have to personally distribute a controlled substance in the Counts against him because he can also be guilty as an aider and abetter in these offenses. (Doc. No. 1093 at 3-5.)

The Court agrees with the Government. Counts 19 and 21 charge Sampson and his co-defendant Dorothy Johnson with violations of 21 U.S.C. § 841. It also charges a violation of 18

U.S.C. § 2, which provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever, willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Clearly, Sampson can be charged as a principal for drug distribution under this statute if he aided and abetted the offense, as charged in the indictment. As the Government points out, the indictment does not have to specify whether a defendant was the aider and abettor or the principal; a defendant indicted as a principal may be convicted upon proof that he aided and abetted and vice versa. See e.g., United States v. Bryan, 483 F.2d 88, 95 (3d Cir. 1973); United States v. Pungitore, 910 F.2d 1084, 1132 (3d Cir. 1990).

### B. Conspiracy and Substantive Counts

Sampson next argues that the counts are multiplicitous because "the conspiracy count charges that during a certain time period, Defendant and co-defendant Dorothy Robinson agreed and acted together to sell drugs to a third person. In counts 19 and 21, both parties are essentially charged with again agreeing and acting together to sell drugs to a third person during the exact same time period." (Doc. No. 1084.) In support of this argument, Sampson contends "[t]he Government has simply taken some of the overt acts charged in the conspiracy count . . . and listed them as separate offenses in Counts 19 and 21" and that "each of the counts against Defendant involved proof of identical facts." (Id.) The Government argues that these counts are not multiplicitous because the conspiracy count requires an agreement, which are not required in the two substantive counts. (Doc. No. 1093 at 5.) Additionally, the Government argues that a

3

conspiracy and offenses committed during the conspiracy have been found to be separate offenses. (Id.)

The Court agrees with the Government. It is well established that a substantive crime and a conspiracy to commit that crime are separate and distinct offenses. See e.g., Callanan v. United States, 364 U.S. 587, 594 (1961) (citing Pinkerton v. United States, 329 U.S. 640, 643 (1946)). For this reason, the Supreme Court has specifically allowed the Government to charge both a conspiracy and the overt acts in furtherance of that conspiracy:

> In language applicable here, we pointedly stated that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." We have continued to recognize this principle over the years.

United States v. Felix, 503 U.S. 378, 389-90 (1992) (quoting United States v. Bayer, 331 U.S. 532, 542 (1947)) (internal citations and quotations omitted). Accordingly, Sampson's contention that these charges are improper is without merit; this motion will be denied.[1]

## III. MOTION TO SUPPRESS

Sampson has moved to suppress "all items found in the search of 725 High Street." (Doc. No. 1127 ¶ 4.) The Government obtained a search warrant for this address on October 1, 2007. In his motion, Sampson challenges the validity of the search warrant based on several arguments attacking the affidavit of probable cause submitted in support of the Government's

---

[1] In his motion, Sampson also requests that the Court order the Government to limit its conspiracy proof at trial to "a time period commencing on January 1, 2007 and terminating on October 2, 2007." (Doc. No. 1082 ¶ 10.) Sampson claims that these dates represent the uncontested dates of his participation in the conspiracy. (Id. ¶¶ 9-10.) Sampson has not persuasively presented this argument, however; he did not cite any authority or present any argument on this issue in his brief in support, claiming the issues are "factual in nature and Defendant believes do not require additional legal argument." As the Government argues, however, it "is entitled to prove the parameters of the conspiracy and show, *inter alia*, its membership, to show knowledge, association, and foreseeability of its aims and purposes . . . ." As such, Sampson's request will be denied.

warrant application. (Doc. No. 1128 at 4-10.) As mentioned above, Sampson's prior counsel also filed a motion to suppress that was based on similar challenges to the affidavit of probable cause (Doc. Nos. 292; 302), which was denied by Judge McClure (Doc. No. 373).

**A. Prior Ruling**

In the interest of economy, the Court will incorporate Judge McClure's complete overview of the affidavit:

> In the search warrant affidavit, the affiant relied on the information of five confidential informants. The affiant states that he is familiar with all five confidential informants and that "[a]ll five confidential informants have provided information in the past that has proved reliable and has been corroborated by independent sources."
>
> The affidavit further states that 723 High Street and 725 High Street are a duplex. On March 23, 2007, Confidential Informant # 2 purchased cocaine from Leanika Johnson at 723 High Street. On April 11, 2007, Confidential Informant # 1 conducted a "controlled purchase" of crack cocaine from Leanika Johnson and Sean Best at 723 High Street. On May 9 and 23, 2007, Confidential Informant # 5 purchased crack cocaine from a codefendant at 725 High Street. On May 31, 2007, Confidential Informant # 2 purchased crack cocaine from a codefendant and Earl Sampson at 725 High Street. On August 1, 2007, Confidential Informant # 4 purchased crack cocaine from defendant Sampson and a codefendant at 725 High Street. Furthermore, Confidential Informants # 1-4 stated that the occupants of 723 and 725 High Street have created a passageway in the attic of the two units in order to provide easy access to drugs on either side of the complex. Furthermore, the informants stated that defendant Sampson resides at 725 High Street.

(Doc. No. 373 at 2-3 (internal citations omitted).) Reviewing this affidavit, Judge McClure rejected the argument that the affidavit did not contain sufficient information concerning the reliability of the confidential informants. (Id. at 6.) He noted in particular that the evidence of controlled purchases by the various informants corroborated the claimed criminal activity. (Id.) Judge McClure also rejected an argument—not raised by Sampson at the time—that the

5

information relied on in the affidavit was stale. (Id. at 7.) Judge McClure therefore concluded that the warrant was valid:

> Therefore, we conclude that the issuing authority had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime will be found at 725 High Street and 608 McMinn Avenue. In fact, we will go one step further and state that if the instant application for a search warrant had been before us, we also would have concluded that there was a fair probability that contraband or evidence would have been found at those addresses and would have authorized the warrant.

(Id. at 8.) Finally, Judge McClure noted that even if the affidavit were insufficient, application of the good faith exception would have resulted in denial of the motion to suppress. (Id.)

### B. Law of the Case

The Government mainly argues that law of the case requires that the Court deny this motion based on Judge McClure's denial of the same issues in the first motion to suppress. (Doc. No. 1149 at 2-9.) The Court agrees with the Government's assessment in that the present motion raises many of the same issues and arguments that were resolved by Judge McClure in the original motion. Indeed, in summarizing his argument, Sampson states "the confidential informant's reliability was not established and the confidential informant's basis of knowledge is not sufficiently identified," which is a claim explicitly rejected by Judge McClure. (Doc. No. 1128 at 4.) Additionally, the timing of this motion is problematic. This motion was filed when the parties were on the verge of trial and over two years after the original suppression motion was denied by Judge McClure. As Judge Vanaskie recently remarked in denying one of Sampson's many motions to continue trial, "defense counsel asserts that he anticipates filing additional pre-trial motions, but the time for filing motions has expired in this protracted criminal prosecution. Defendant's latest lawyer has filed motions, and the serial filing of pretrial

motions is not to be countenanced." (Doc. No. 1126.)

Reconsidering long-settled issues at a later point in the same case is not a casual endeavor, especially when it concerns the decision of a prior judge on the case. See Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994) ("Although [law of the case doctrine] does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court or from a court of coordinate jurisdiction, it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case."). Despite this, unfortunately, Sampson's counsel spends little time in his brief justifying his request for this Court to reevaluate the affidavit of probable cause. He fails to present any argument or authority to suggest that the law of the case doctrine should not apply to defeat the motion under these circumstances. See Government of Virgin Islands v. Riley 973 F.2d 224, 228 n.8 (3d Cir. 1992) (court will adhere to earlier decision under law of the case doctrine absent "compelling reasons not to, such as an intervening change in the law, newly discovered evidence or the need to correct clear error or prevent a manifest injustice."). Sampson's counsel simply mentions that "prior counsel did not address certain issues raised herein, because said counsel did not have the advantage of having certain discovery materials now available to Defendant." (Doc. No. 1127 at 1.) He never explains exactly what new evidence he has uncovered that would not have been in the possession of prior counsel. Therefore, Sampson's counsel has not made a persuasive showing that the Court should consider the motion on the merits and the Court will not consider issues already addressed by Judge McClure. However, out of an abundance of caution, the Court will briefly review Sampson's arguments regarding factual inaccuracies in the affidavit that appear to be clearly based on new

evidence.

### C. Factual Misstatements in the Affidavit

After review of the two motions, it is clear that the only new evidence at issue relates to alleged "false and misleading" statements made in the probable cause affidavit. (Id. at 1.) Though an affidavit supporting probable cause has a presumption of validity, a criminal defendant may challenge the veracity of factual statements appearing in the affidavit. See Franks v. Delaware, 438 U.S. 154, 171 (1978). To justify a hearing, "the defendant must make a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (quoting Franks, 438 U.S. at 171).

In his brief, Sampson points to the following paragraphs in the affidavit that he contends are false and misleading: 19, 23, 24, 25, 26, 27, and 28. Paragraph 19 references confidential informant # 2 purchasing cocaine from codefendant Leankika Johnson at 723 High Street. (Affidavit, ¶ 19.) Sampson claims this is false because the discovery materials show that the confidential informant purchased the drugs "in the vicinity of Prospect Avenue and Grant Court." (Doc. No. 1128 at 6.) Paragraphs 23 and 24 reference purchases of crack cocaine from "Dorothy Robinson and Earl Sampson" inside the residence at 725 High Street on May 31, 2007, and August 1, 2007. (Affidavit, ¶¶ 23-24.) Sampson claims these statements are misleading because the discovery material shows that the confidential informants purchased the drugs directly from Dorothy Robinson on these dates; Sampson was only present in his residence. (Doc. No. 1128 at 7.) Finally, Sampson questions paragraphs 25 through 28 because his own

8

review of the discovery material did not turn up a direct reference to the statements and events recalled in these paragraphs. (Doc. No. 1128 at 9.)

Sampson has failed to meet his burden to justify a <u>Franks</u> hearing in several ways. In making his arguments, Sampson frequently references the discovery disclosures he has received from the Government, including Jencks Act material. Unfortunately, Sampson has neither attached the documents he references to his motion nor reproduced the relevant portions in the body of his brief. This is insufficient under <u>Franks</u>. See <u>Yusuf</u>, 461 F.3d at 383 n.8 (quoting <u>Franks</u> 438 U.S. at 171) ("[T]he defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.").

Even assuming the truth of Sampson's assertions regarding the discovery material, Sampson has not shown he is entitled to a <u>Franks</u> hearing. Sampson must show that the alleged false statements in the affidavit were made knowingly or with reckless disregard for the truth; "[a]llegations of negligence or innocent mistake are insufficient." <u>Franks</u>, 438 U.S. at 171. As the Third Circuit has held, "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." <u>Yusuf</u>, 461 F.3d at 384 (quoting <u>Wilson v. Russo</u>, 212 F.3d 781, 783 (3d Cir. 2000)). Sampson has failed to show any inaccuracies with particularity in paragraphs 25 through 28. His apparent argument that there may be false statements in these paragraphs due to the alleged lack of reference to the events in the discovery material is merely conjecture and does not satisfy his burden.

Sampson also refers to virtually no evidence showing that the remaining alleged false statements in paragraphs 19, 23, and 24 were made with more than mere negligence. He simply

9

states, with respect only to paragraphs 23 and 24, that the affiant had debriefed the confidential informants at issue "immediately after the alleged buys . . . ." (Doc. No. 1128 at 7.) Assuming that the remaining statements satisfy the Wilson standard, they were not necessary to a finding of probable cause from the affidavit. Even where there is sufficient preliminary evidence of recklessly false statements, the district court must assess "whether the statements and omissions made with reckless disregard of the truth were 'material, or necessary,' to the finding of probable cause." Wilson, 212 F.3d at 789 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)). The district court excises the inaccurate statements and determines if the corrected warrant affidavit would establish probable cause. Id.

The Court finds that the "corrected" affidavit in this case still establishes probable cause here even after excising the alleged inaccuracies in paragraphs 19, 23, and 24. The Court engages in a totality of the circumstances analysis to determine whether probable cause exists: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). As Judge McClure discussed in his order, there was sufficient evidence in the affidavit establishing the reliability of the confidential informants who provided information. Removing the alleged inaccuracies does not undermine the informant's reliability. Considering statements from the informants, there was significant evidence of drug dealing activity at the High Street duplex in the affidavit. There was also specific evidence that Sampson was personally dealing crack cocaine from 725 High Street and storing it in the residence. (See

Affidavit, ¶¶ 25-27.)  Finally, circumstances set forth in the affidavit suggest that the residents on both sides of the duplex were working together as an integrated unit.  For instance, the occupants of the duplex created a passageway in the attic to easily access drugs stored on either side or to offer an escape path in a raid.  (Affidavit, ¶ 28.)  As such, considering the corrected affidavit, the Court finds that it still establishes probable cause to search 725 High Street.

Accordingly, considering all of the above, the Court will deny Sampson's motion to suppress.

### IV.  CONCLUSION

For the foregoing reasons, the Court will deny Defendant Sampson's motions to dismiss and to suppress evidence.  An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal No. 4:07-CR-389-12 |
| v. | : | |
| | : | (Chief Judge Kane) |
| EARL SAMPSON, | : | |
| | : | |
| Defendant | : | |

# ORDER

**AND NOW**, on this 15th day of June 2010, upon consideration of Defendant Earl Sampson's motions to dismiss counts of the indictment (Doc. No. 1082), and suppress physical evidence (Doc. No. 1127), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motions are **DENIED**.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania