**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 4:07-CR-389** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **EARL SAMPSON,** | : | |
| **Defendant** | : | |

<u>**MEMORANDUM**</u>

Presently pending before the Court is Defendant Earl Sampson's motion to dismiss the indictment based upon an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq.</u> (Doc. No. 1287.)  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the Court will grant Sampson's motion and dismiss the charges against him without prejudice.

## I.    PROCEDURAL HISTORY

On January 3, 2011, Sampson filed a motion to dismiss the indictment for violations of the Speedy Trial Act ("the Act").  (Doc. No. 1287.)  The Government filed a brief in opposition to the motion on January 12, 2011.  (Doc. No. 1294.)  On January 14, 2011, the Court ordered supplemental briefing from both parties.  (Doc. No. 1295.)  The Government filed its supplemental brief on January 28, 2011.  (Doc. No. 1303.)  Sampson filed supplemental briefs on February 14 and 16, 2011.  (Doc. Nos. 1317, 1320.)  The Court held a hearing on Sampson's motion to dismiss on April 1, 2011.

## II.    STANDARD OF REVIEW

The Speedy Trial Act provides that the trial of a defendant who has entered a plea of not guilty must commence within 70 days from the filing (and making public) of the indictment, or

from the date the defendant has appeared before a judicial officer in which such charge is

pending, whichever last occurs.  18 U.S.C. § 3161(c)(1).  However, section 3161(h) sets forth

various periods of delay which may be excluded when computing the time within which trial

must commence.

The periods of delay relevant to this case include "delay resulting from any proceeding,

including any examinations, to determine the mental competency or physical capacity of the

defendant" and "delay resulting from any interlocutory appeal."  18 U.S.C. § 3161(h)(1)(A) &

(C).  Other relevant periods include "delay resulting from any pretrial motion, from the filing of

the motion through the conclusion of the hearing on, or other prompt disposition of, such

motion" and "delay reasonably attributable to any period, not to exceed thirty days, during which

any proceeding concerning the defendant is actually under advisement by the court."  Id. §

3161(h)(1)(D) & (H).  The Act also excludes a "reasonable period of delay when the defendant

is joined for trial with a codefendant as to whom the time for trial has not run and no motion for

severance has been granted."  Id. § 3161(h)(6).  Finally, the Act excludes a delay resulting from

an "ends of justice" continuance, defined as:

> (7)(A) Any period of delay resulting from a continuance granted by
> any judge on his own motion or at the request of the defendant or his
> counsel or at the request of the attorney for the Government, if the
> judge granted such continuance on the basis of his findings that the
> ends of justice served by taking such action outweigh the best interest
> of the public and the defendant in a speedy trial. No such period of
> delay resulting from a continuance granted by the court in accordance
> with this paragraph shall be excludable under this subsection unless
> the court sets forth, in the record of the case, either orally or in
> writing, its reasons for finding that the ends of justice served by the
> granting of such continuance outweigh the best interests of the public
> and the defendant in a speedy trial.
>
> (B) The factors, among others, which a judge shall consider in
> determining whether to grant a continuance under subparagraph (A)

of this paragraph in any case are as follows:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> . . .
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(7)(A) & (B).

For purposes of calculating includable time, "both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded." United States v. Lattany, 982 F.2d 866, 872 n.6 (3d Cir. 1992). Finally, the defendant bears the burden of proof of supporting a motion to dismiss the indictment. 18 U.S.C. § 3162(a)(2).

## III. DISCUSSION

### A. Speedy Trial Violation

On September 27, 2007, a grand jury returned an indictment against Sampson and thirteen other individuals. (Doc. No. 1.) Count One of the indictment charged Sampson and his

thirteen codefendants with conspiracy to possess with intent to distribute 5 or more grams of cocaine base (crack), conspiracy to possess with intent to distribute 500 or more grams of cocaine, and conspiracy to unlawfully, knowingly and intentionally possess with intent to distribute crack and cocaine within protected zones in violation of 21 U.S.C. § 860(a).  (Doc. No. 1.)  Count Nineteen of the indictment charged Sampson and codefendant Dorothy Robinson with possession with the intent to distribute and distribution of cocaine within 1000 feet of public housing in violation of 21 U.S.C. § 841(a)(1) , 21 U.S.C. § 860(a), and 18 U.S.C. § 2.  (Id.) Count Twenty-One of the indictment charged Sampson and Robinson with possession with intent to distribute and distribution of crack within 1000 feet of public housing in violation of section 841(a), section 860(a), and 18 U.S.C. § 2.  (Id.)  On October 2, 2007, Sampson made his initial appearance before a judicial officer when he was arraigned before Magistrate Judge Mannion.  Sampson pled not guilty to all counts of the indictment and was ordered detained pending trial.  (Doc. Nos. 31, 37, 58.)  Thus, Sampson's speedy trial clock began to run on October 2, 2007.  18 U.S.C. § 3161(c)(1) ("[T]he trial of a defendant . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.").  Trial was scheduled for December 4, 2007.  (Doc. No. 85.)

Section 3161(h)(1)(D) states that a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable time.  In the Third Circuit, "[a]ny pretrial motion, including a motion for an extension of time, is a pretrial motion within the meaning of [the Act] and creates

4

excludable time, even if it does not in fact delay trial." United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993). Thus, the speedy trial clock tolled on October 4, 2007, when Sampson's codefendant Reyne Erb filed a motion to continue Erb's detention hearing. (Doc. No. 54.) See 18 U.S.C. § 3161(h)(6) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."); United States v. Novak, 715 F.2d 810, 815 (3d Cir. 1983) (finding that until severance is granted, "an exclusion applicable to one defendant applies to all codefendants," subject to a reasonableness limitation). On October 5, 2007, Judge Mannion granted Defendant Erb's motion and the clock began to run again. (Doc. No. 56.) The clock tolled again on October 9, 2007, when Sampson's codefendant Jeffrey Mitchell filed a motion to continue Mitchell's detention hearing. (Doc. No. 78); see 18 U.S.C. § 3161(h)(1)(D); Arbelaez, 7 F.3d at 347; Novak, 715 F.2d at 815. Judge Mannion granted Defendant Mitchell's motion that same day, and the clock began to run again. (Doc. No. 89.)

A first superseding indictment was filed on October 11, 2007. (Doc. No. 101.) On October 15, 2007, the clock tolled when Sampson filed a motion for extension of time to file pretrial motions. (Doc. No. 115.) Sampson filed a motion for review and revocation of his detention order on October 16, 2007. (Doc. No. 120.) Judge Muir granted Sampson's motion for extension of time (Doc. No. 115) on October 17, 2007. (Doc. No. 130.) While the Government argues that this order (Doc. No. 130) should be construed as an ends of justice continuance, the Court need not reach this issue because the clock remained tolled due to Sampson's pending motion for review and revocation of his detention order (Doc. No. 120).

A second superseding indictment was filed on October 25, 2007. (Doc. No. 154.) While

Counts Nineteen and Twenty-One remained the same, Count One of the second superseding indictment differed from Count One of the original indictment in several respects.  First, an additional defendant, Sharif Cliett, was added to Count One.  (Doc. No. 154 at 2.)  Second, the time frame of Count One of the original indictment began "on or about the 1st day of January, 2003," while the time frame of Count One of the second superseding indictment began "on or about the 1st day of January, 1999."  (Doc. No. 1. at 1, Doc. No. 154 at 1.)  Third, the amount of crack at issue increased from 5 or more grams in the original indictment to 50 or more grams in the second superseding indictment.  (Doc. No. 1 at 2; Doc. No. 154 at 2.)  Finally, the charge of conspiracy to possess with intent to distribute marijuana was added to Count One of the second superseding indictment.  (Doc. No. 154 at 2.)  Marijuana was also added to the list of drugs that Sampson and his codefendants allegedly conspired to possess with intent to distribute within protected zones.  (Id. at 2-3.)

In the Third Circuit, "when subsequent charges are filed in a supplemental indictment that charge the same offense as the original indictment or one required to be joined therewith," the speedy trial clock runs from the original filing.  Lattany, 982 F.2d at 872 n.7.  However, if the supplemental indictment charges a new offense that did not have to be joined with the original charges, the supplemental indictment starts a new, independent speedy trial period for the new offense.  Id.  Courts use a double jeopardy analysis when determining whether an offense is required to be joined with another.  See Novak, 715 F.2d at 817 (3d Cir. 1983).  The Third Circuit has adopted a "totality of the circumstances" test for evaluating the merits of a conspiracy defendant's double jeopardy claim.  United States v. Liotard, 817 F.2d 1074, 1078 (3d Cir. 1987).  The totality of the circumstances test requires consideration of whether: (1) the

6

"locus criminis" of the two alleged conspiracies is the same; (2) there is a significant degree of temporal overlap between the two conspiracies charged; (3) there is an overlap of personnel between the two conspiracies, including unindicted coconspirators; and (4) the overt acts charged and the role played by the defendant according to the two indictments are similar.  Id. These factors are not to be applied rigidly; instead, the Court is to use the factors "to determine whether two groups of conspirators . . . are actually all committed to the same set of objectives in a single conspiracy." United States v. Smith, 82 F.3d 1261, 1271 (3d Cir. 1996).  The goal is to ascertain "whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement." Liotard, 817 F.2d at 1078.  Courts are generally limited to the face of the indictments when conducting this analysis for speedy trial purposes. Novak, 715 F.2d at 817.

Applying the totality of the circumstances test to the indictments at issue, the Court concludes that the conspiracy charged in the second superseding indictment constituted a new offense for double jeopardy purposes.  It is true that the "locus criminis" of the two alleged conspiracies is the same: both indictments state the location of the conspiracies as "Lycoming County, and elsewhere in the Middle District of Pennsylvania and within the jurisdiction of this Court and elsewhere."  (Doc. No. 1 at 2; Doc. No. 154 at 1.)  In addition, there is a significant degree of temporal overlap, and the time frame of the first indictment (beginning on or before January 1, 2003) is completely subsumed within the time frame of the second superseding indictment (beginning on or before January 1, 1999). See Liotard, 817 F.2d 1079 ("[W]hile the time periods of the two indictments differ, the period of the conspiracy charged in the [first]

indictment is entirely subsumed within the period of time set out in the [second] indictment").

Further, there is an overlap in personnel between the two conspiracies, with the second

superseding indictment adding only one additional defendant to Count One.  However, an

overlap in time and personnel is not automatically indicative of a single conspiracy.  See United

States v. Becker, 892 F.2d 265, 268 (3d Cir. 1989).  Thus, the Court must consider whether the

overt acts charged and the roles played by Sampson according to the two indictments are similar.

Neither indictment identifies any specific role a particular defendant played in the conspiracy.

Comparing the face of the two indictments, there is one difference in the overt acts charged:

under the heading "Manner and Means," the second superseding indictment adds that defendants

"possessed with intent to distribute marijuana within 1000 feet of public housing and

playgrounds."  (Doc. No. 154 at 4 ¶ 6.)  In addition to this difference, the Court finds that the

objectives of the conspiracies differed.  In United States v. Claxton, 367 F. App'x 326, 329 (3d

Cir. 2010), the Third Circuit found that a conspiracy to obtain and distribute cocaine and crack

had a different objective than a conspiracy to distribute marijuana.  Therefore, the Court

concludes that Count One of the second superseding indictment constituted a new offense for

double jeopardy purposes.[1]   Sampson was arraigned on the second superseding indictment on

November 7, 2007.  (Doc. No. 188.)  Sampson's speedy trial clock reset as to Count One on that

date.  At that time, a total of 9 days had run on Sampson's speedy trial clock as to Counts

Nineteen and Twenty-One.

On November 15, 2007, Judge Muir continued trial to February 4, 2008, pursuant to the

---

[1] Sampson's speedy trial clock is reset as to Count One only.  Because Counts Nineteen and Twenty-One remained the same in the second superseding indictment, the speedy trial clock on those two counts continues to run from October 2, 2007.

Act.  (Doc. No. 221.)  On January 22, 2008, Judge Muir again continued trial to May 2, 2008,

also pursuant to the Act.  (Doc. No. 324.)  On March 14, 2008, the case was reassigned to Judge

McClure.  (Doc. No. 360.)  Between April 21, 2008, and May 19, 2009, Judge McClure ordered

a series of continuances of the trial date.  (See Doc. Nos. 382, 403, 416, 425, 452, 531, 559, 585,

658, 696, 733, 741, 766.)  The record shows, and Sampson agrees, that the continuances were

made pursuant to the Act.  (Id., Doc. No. 1317 at 2-3.)  A third superseding indictment was filed

during that time.[2]  (Doc. No. 435.)  The last continuance in the series ordered by Judge McClure

continued trial to July 7, 2009.  (Doc. No. 766.)

On June 26, 2009, Judge McClure recused himself and the case was reassigned to Judge

Vanaskie.  (Doc. No. 799.)  That same day, Judge Vanaskie granted codefendant Brent Jenkin's

motion to continue trial (Doc. No. 779), and trial was continued to August 31, 2009.  (Doc. No.

800.)  The order continuing trial states in full:

> AND NOW, this 26th day of June, 2009, upon the request of the
> Defendant to Continue the Trial currently scheduled to occur on July
> 7, 2009, said Motion is Granted.  The Trial is now scheduled to occur
> on 31st day of August, 2009 in Courtroom to be designated by the
> Clerk of Court.

(Doc. No. 800.)  Sampson argues that this order may not be construed as an ends of justice

continuance and the delay resulting from the continuance must be counted.  (Doc. No. 1317 at

3.)  The Government argues that while the order does not reference the Speedy Trial Act or set

forth any express findings regarding the ends of justice, the delay is excludable as an ends of

---

[2] The third superseding indictment did not add any additional charges against Sampson, and a consideration of the Liotard factors leads the Court to conclude that the conspiracy in Count One is the same conspiracy charged in the second superseding indictment for double jeopardy purposes.  Therefore, the filing of the third superseding indictment does not affect Sampson's speedy trial clock.

justice continuance.  (Doc. No. 1303 at 15-16.)  Because there is nothing in the record to suggest

that the court made the requisite findings required by the Act, the Court must agree with

Sampson.

The Act excludes delay resulting from a continuance "if the judge granted such

continuance on the basis of his findings that the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. §

3161(h)(7)(A).  However, the statute provides that the court must justify its continuances by an

oral or written statement setting forth on the record its reasons for granting them. Id. §

3161(h)(7)(A).  "If such a statement is not provided, the delay occasioned by a continuance

cannot be excluded from the time within which a criminal defendant must be brought to trial."

Lattany, 982 F.2d at 877.  The Third Circuit explained that "the purpose of the requirement that

reasons be stated is to insure careful consideration of the relevant factors by the trial court and to

provide a reviewable record on appeal.  Both purposes are served if the text of the order, taken

with more detailed subsequent statements, adequately explains the factual basis for the

continuance under the relevant criteria . . . ." Id. at 879.  Recently, in Zedner v. United States,

547 U.S. 489, 506-07 (2006), the Supreme Court held that the Speedy Trial Act requires a court

to make "express findings" about the "ends-of-justice balance."

The Government relies on the Third Circuit's statement in Lattany that "it is not

necessary for [the district court] to articulate facts which are obvious and are set forth in the

motion for the continuance itself."  982 F.2d at 879 (citing United States v. Rush, 738 F.2d 497,

507 (1st Cir. 1984)).  While this may be true, the Act still requires the court to make express

findings regarding its reasons for granting the continuance.  See Zedner, 547 U.S. at 506-07;

Lattany, 982 F.2d at 877.  Here, there is nothing in the text of the order or on the record to

support the conclusion that the court engaged in a "careful consideration of the relevant factors"

when it continued trial to August 31, 2009.  Lattany, 982 F.2d at 879.  In United States v.

Brenna, 878 F.2d 117, 122 (3d Cir. 1989), the Third Circuit held that in an order granting an

ends of justice continuance, a "district court must, at a minimum, state that it is entering an 'ends

of justice' continuance or a continuance pursuant to [section 3161(h)(7)(A)]."  In Lattany, the

Third Circuit explained:

> The formal requirements imposed by Brenna supplement the
> requirements we set out in [United States v. Rivera, 863 F.2d 293,
> 296 (3d Cir. 1988)].  In Rivera, the district court did not utilize a
> preprinted Speedy Trial Act delay form order or state that the
> continuance was pursuant to the Act or necessary for the "ends of
> justice."  Rather, the district court merely stated that it was granting
> a continuance to allow counsel adequate time to prepare for trial.
> This reason met the requirements of the Act's special provision
> allowing continuances to give adequate preparation time to counsel.

982 F.2d at 879 n.16.  Accordingly, Rivera is still good law, despite Brenna's formal

requirements.  A district court may "state reasons contemporaneously with an order continuing

trial that *demonstrate* an ends-of-justice finding without actually using the words 'ends of

justice' or referring to the statute at the time of the continuance."  United States v. Brodhurst,

No. 2000-12, 2001 WL 1112143, at *2 (D.V.I. 2001) (emphasis in original).  However, unlike

the facts of Rivera, the court here did not give any reason for the continuance when it issued the

order.  The Court cannot point to anything in the record that demonstrates an ends of justice

finding.  Moreover, while a court is not required to set forth the reasons for its decision to grant

the continuance at the time it is doing so, the court did not supplement the order with "more

detailed subsequent statements."  Lattany, 982 F.2d at 879; see also United States v. Brooks, 697

F.2d 517, 521-22 (3d Cir. 1982).  Nor can the undersigned do so at this time.  <u>See</u> <u>United States</u>

<u>v. Ramirez-Cortez</u>, 213 F.3d 1149, 1154-55 (9th Cir. 2000) (finding that where a magistrate

judge did not make any ends of justice findings pursuant to the Act, the district court judge could

not subsequently assume that the magistrate intended to make such findings).

The Government's argument that "it is apparent from the motion that the continuance

was granted to allow for continuity of counsel for codefendant Jenkins and to allow for plea

negotiations" must be rejected.  In a recent nonprecedential opinion, the Third Circuit stated that

"a district court's findings are generally sufficient if they track the language of the statute, and

are based on factual assertions contained in one party's motion for a continuance."  <u>United States</u>

<u>v. Thomas</u>, 322 F. App'x 177, 182 (3d Cir. 2009) (citations omitted).  In <u>Thomas</u>, the district

court granted the defendant's motion to continue "without placing any findings on the record."

<u>Id.</u> at 183.  As a result, the Third Circuit counted the days resulting from the continuance.  <u>Id.</u>  In

the present case, the court similarly granted the defendant's motion to continue without placing

any findings in the record or in the text of the order.  Thus, the Court must conclude that the

order continuing trial to August 31, 2009, may not be construed as an ends of justice

continuance, and the delay resulting from the continuance will be counted.

At the time of Judge Vanaskie's order, the speedy trial clock was tolled due to

codefendant Robinson's filing of a notice of appeal from the court's order denying her motion

for release from custody.  (Doc. No. 765); <u>see</u> 18 U.S.C. § 3161(h)(1)(E) (exclusion for

interlocutory appeals); <u>United States v. DiPasquale</u>, 740 F.2d 1282, 1293 (3d Cir. 1984) (finding

that "the time during the pendency of [codefendant 1's] interlocutory appeal was excludable

from [codefendant 2's] seventy-day period to trial").  Therefore, the speedy trial clock began to

run again on July 7, 2009, when the Third Circuit denied Defendant Robinson's appeal. (Doc.
No. 810.)

The clock ran for five days before it tolled on July 13, 2009, when the Government filed
a motion to file a document under seal (Doc. No. 817). 18 U.S.C. § 3161(h)(1)(D). The clock
began to run again when the Government's motion (Doc. No. 817) was terminated on July 14,
2009. The clock ran for two days before it was tolled on July 17, 2009, when the Government
filed two motions to file documents under seal. (Doc. Nos. 822, 824.) The clock began to run
again when the last motion was terminated on July 21, 2009. The clock ran for five days before
it was tolled on July 27, 2009, by the filing of codefendant Thurman Smith's motion to continue
his change of plea hearing. (Doc. No. 835). As of this date, a total of 21 days had run on
Sampson's speedy trial clock for Counts Nineteen and Twenty-One, and 12 days had run on his
speedy trial clock for Count One.

On July 28, 2009, codefendant Sean Best filed a motion for disclosure of confidential
informants. (Doc. No. 836.) This motion was still pending on August 24, 2009, when Sampson
filed a motion to continue and to sever. (Doc. No. 903.) The next day, Judge Vanaskie granted
Sampson's motion and severed Sampson from his codefendants. (Doc. No. 904.) The order also
continued trial to October 13, 2009, pursuant to the Act. (Id.) On October 1, 2010, Judge
Vanaskie granted Sampson's motion to continue (Doc. No. 957) and continued trial to December
7, 2009, pursuant to the Act. (Doc. No. 958.) Sampson filed another motion to continue on
November 25, 2009. (Doc. No. 1009.) Judge Vanaskie granted the motion on November 30,
2009, and continued trial to January 12, 2010, pursuant to the Act. (Doc. No. 1011.)

On December 1, 2009, the Government filed a motion for joinder, arguing that Sampson

and former codefendant Sean Best be joined for trial.  (Doc. No. 1015.)  On December 22, 2009,

Judge Vanaskie ordered oral argument on the motion on January 15, 2010, and set trial for

March 1, 2010, if the court denied the motion.  (Doc. No. 1050.)   On January 15, 2010, after

oral argument, Judge Vanaskie denied the Government's motion for joinder and set trial for

March 1, 2010.  (Doc. No. 1063.)  The Government concedes that the clock began to run again

on this date because neither order setting trial for March 1, 2010, (Doc. Nos. 1050, 1063)

qualifies as an ends of justice continuance.  (Doc. No. 1303 at 18.)  Thus, the clock ran until

February 1, 2010, when Sampson filed a motion to dismiss the indictment.  (Doc. No. 1069.)  As

of February 1, 2010, a total of 37 days had run on Sampson's speedy trial clock for Counts

Nineteen and Twenty-One, and 28 days had run on the speedy trial for Count One.

On February 5, 2010, Sampson filed a motion to dismiss counts of the indictment and to

continue trial.  (Doc. No. 1082.)  Judge Vanaskie granted Sampson's motion to continue and

continued trial to March 22, 2010.[3]  (Doc. No. 1085.)  On March 16, 2010, Sampson filed a

motion to continue (Doc. No. 1104), which Judge Vanaskie granted the same day.  The court

made the requisite findings under the Act and continued trial to May 3, 2010.  (Doc. No. 1106.)

On April 13, 2010, Judge Vanaskie denied Sampson's motion to dismiss the indictment (Doc.

No. 1069).  (Doc. No. 1118.)  On April 15, 2010, Sampson filed a motion for a discovery

conference.  (Doc. No. 1121.)  Sampson filed a motion to suppress evidence on April 26, 2010.

(Doc. No. 1127.)  On April 27, 2010, Sampson filed a motion for discovery.  (Doc. No. 1131.)

Also on April 27, 2010, the case was reassigned to the undersigned.  On May 16, 2010, the Court

---

[3] While this order (Doc. No. 1085) does not reference the Act or make any ends of justice findings, the Court need not address whether it qualifies as an ends of justice continuance because Sampson's pending pretrial motions (Doc. Nos. 1069, 1082) continue to toll the clock.

scheduled trial for June 28, 2010.[4]  (Doc. No. 1141.)  On June 15, 2010, the Court issued an

order denying Sampson's motion to dismiss counts of the indictment (Doc. No. 1082) and

motion to suppress evidence (Doc. No. 1127).  (Doc. No. 1177.)  The clock remained tolled due

to Sampson's pending pretrial motions (Doc. Nos. 1121, 1131).  On June 15, 2010, and June 22,

2010, the Court held telephone conferences to discuss the discovery issues that were the subject

of these motions.  (Doc. No. 1176, 1196.)  At the June 22, 2010, telephone conference, the Court

ordered the Government to submit testifying confidential informant files to the Court for in

camera inspection and resolved to address any remaining issues at a pretrial hearing.  (Doc. No.

1131.)

On June 28, 2010, the day trial was scheduled to commence, Sampson's family members

raised the issue of his competency to stand trial.  (Doc. No. 1213.)  Defense counsel called

witnesses to testify regarding the issue, and the Court ordered Sampson to undergo a competency

evaluation.  (Id.; Doc. No. 1214.)  In addition, the Court again ordered the Government to submit

information regarding potential witnesses to the Court by July 6, 2010, for an in camera review.

(Id.)  The Court's order directing Sampson to undergo a competency evaluation triggered a

period of excludable delay pursuant to the Act.  See 18 U.S.C. § 3161(h)(1)(A) (excluding

"delay resulting from any proceeding, including any examinations, to determine the mental

competency . . . of the defendant").  On September 13, 2010, Sampson's competency hearing

was cancelled because Sampson accepted the results of the competency evaluation which found

that Sampson was competent to stand trial.  (Doc. Nos. 1252; 1254.)  The Government concedes

---

[4] While this order (Doc. No. 1141) is not an ends of justice continuance, Sampson's
pending pretrial motions (Doc. Nos. 1082, 1121, 1127, 1131) kept the clock tolled.

that "because there was no ends-of-justice continuance, the [clock] ran until the next excludable event."  (Doc. No. 1303 at 21.)

On October 5, 2010, the Court issued an order setting a telephone conference for October 12, 2010, "to discuss the status of this case."  (Doc. No. 1257.)  Assistant United States Attorney William Simmers and defense counsel Charles Witaconis appeared for the call.  (Doc. No. 1261.) Defense counsel suggested a pretrial conference, and a possible trial date of November 29, 2010, was discussed.  (Id.)  On October 15, 2010, the Court issued a "pretrial order" setting a pretrial conference for October 26, 2010, and jury selection for November 29, 2010.  (Doc. No. 1262.) The October 15, 2010 order does not make an "ends of justice" finding pursuant to the Act, nor does it suggest that the Court considered any of the factors listed in section 3161(h)(7)(B) in setting a date for trial.  Despite this, the Government contends that this order should be construed as an ends of justice continuance.  (Doc. No. 1303 at 22.)  The Court cannot agree.

The Government cites to the Supreme Court's statement in Zedner that, "at the very least, . . . [the court's] findings must be put on the record by the time a district court rules on the motion to dismiss."  547 U.S. at 507.  It has long been the law in the Third Circuit that a court is not required to enter the reasons for its decision to grant a continuance at the same time the decision is made.  See Lattany, 982 F.2d at 877; Brooks, 697 F.2d at 522.  However, the following excerpt from Brenna suggests that more than subsequent findings is required:

> We continue to hold, as we stated in Brooks, that a district judge may detail his reasons for granting an ends of justice continuance some time after he enters the order granting such a continuance.  We reaffirm, however, that an ends of justice continuance pursuant to [section 3161(h)(7)(A)] cannot be entered nunc pro tunc, and hold that **in its order**, the district court must, at a minimum, state that it is entering an ends of justice continuance or a continuance pursuant to [section 3161(h)(7)(A)].

16

878 F.2d at 122 (emphasis added).  The Court finds the order at issue in <u>Brenna</u> to be similar to

the pretrial order (Doc. No. 1262) in the present case.  In <u>Brenna</u>, the district court issued an

order setting a date for trial.  <u>Id.</u> at 118-19.  On appeal, the Government argued that the order

could be construed as an ends of justice continuance.  The Third Circuit disagreed, finding "such

a construction to be at odds with the letter and spirit of the Speedy Trial Act."  <u>Id.</u> at 121.  After

noting that "the district court's characterization of its May 26 action as an 'ends of justice'

continuance did not occur until after the expiration of the statutory seventy-day time limit," the

Third Circuit cautioned there is a danger of a district court retroactively using a continuance to

manufacture excludable time after the defendant files a motion to dismiss.  <u>Id.</u>; <u>see also</u> <u>United</u>

<u>States v. Tunnessen</u>, 763 F.2d 74, 78 (2d Cir. 1985); <u>United States v. Janik</u>, 723 F.2d 537, 544-

45 (7th Cir. 1983) ("If the judge gives no indication that a continuance was granted upon a

balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment

for violation of the Act, the danger is great that every continuance will be converted retroactively

into a continuance creating excludable time, which is clearly not the intent of the Act.").  While

the Government may be correct that the "reasoning set forth by counsel during the conference

call is sufficient to support the granting of an ends-of-justice continuance," the fact remains that

this reasoning is nowhere on the record or in the text of the Court's October 15, 2010 order.

Accordingly, the Court declines to construe its scheduling order as an ends of justice

continuance.

Because the Court finds that the October 15, 2010 order does not toll the speedy trial

clock, the clock continued to run until November 4, 2010, when Sampson filed a motion to

continue.  (Doc. No. 1271.)  As of November 4, 2010, a total of 88 days had run on Sampson's

17

speedy trial clock for Counts Nineteen and Twenty-One, and 79 days had run on his speedy trial

clock for Count One.   Therefore, the indictment must be dismissed.

### B.        Dismissal Under 18 U.S.C. § 3162(a)(2)

Section 3162(a)(2) provides that in deciding whether to dismiss the indictment with or

without prejudice, "the court shall consider, among others, each of the following factors: the

seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and

the impact of a reprosecution on the administration of this chapter and on the administration of

justice."  18 U.S.C. § 3162(a)(2); see also United States v. Taylor, 487 U.S. 326 (1988).

First, the Court considers the seriousness of the charges.  Sampson is charged with

conspiracy to possess with intent to distribute 50 or more grams of crack in violation of 21

U.S.C. § 841(a)(1) & (b)(1)(A)(iii); conspiracy to possess with intent to distribute 500 or more

grams of cocaine, in violation of section 841(a)(1) & (b)(1)(B)(ii); conspiracy to possess with

intent to distribute marijuana in violation of section 841(a)(1); and conspiracy to unlawfully,

knowingly and intentionally possess with intent to distribute crack and cocaine within protected

zones in violation of section 860(a).  Sampson is also charged with possession with intent to

distribute and distribution of crack and cocaine within 1000 feet of public housing in violation of

section 841(a)(1), section 860(a), and 18 U.S.C. § 2.   These are serious offenses.  See United

States v. Brown, 770 F.2d 241, 244 (1st Cir. 1985) ("The distribution of a substantial amount of

a hard drug like cocaine is a serious and grave offense against society as a whole, and the district

court properly found that the offense weighed heavily in favor of dismissal without prejudice.");

United States v. Archer, 984 F. Supp. 321, 323 (E.D. Pa. 1997) (finding that distribution of crack

in violation of 21 U.S.C. § 841(a)(1) constitutes a serious offense); United States v. Cortinas,

785 F. Supp. 357, 360 (E.D.N.Y. 1992) ("[A]ppellate courts have generally considered cases that involve even small quantities of proscribed drugs to constitute 'serious' offenses for purposes of the Speedy Trial Act."). This factor weighs in favor of dismissal without prejudice.

Next, the Court must consider the facts and circumstances of the case which led to dismissal. In the present case, the speedy trial violation was primarily the result of two court orders which did not trigger excludable time under the Act. (Doc. Nos. 800, 1262.) The Court finds that there is no showing of bad faith or a pattern of neglect on the part of the Government. See Taylor, 487 U.S. at 338 ("[A] truly neglectful attitude on the part of the Government reasonably could be factored against it . . . ."). The Court cannot say that "more than an isolated unwitting violation" occurred or that the Government delayed the case so as to gain an unfair advantage. See id. (requiring "more than an isolated unwitting violation . . . [to] alter[ ] the balance"). Indeed, noncompliance with the Act in this case was inadvertent and not fairly attributable to any malfeasance on the part of the Government. This factors also weighs in favor of dismissal without prejudice.

The third factor under the Act requires the Court to consider "the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). In Taylor, the Supreme Court considered prejudice to the defendant when determining whether a reprosecution would be adverse to the administration of justice. 487 U.S. at 338-39. The Supreme Court identified prejudice to the defendant both "in terms of his ability to prepare for trial [and] the restrictions on his liberty." 487 U.S. at 340; see also Barker v. Wingo, 407 U.S. 514, 537 (1972) ("[I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the

defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." (citations omitted)).  Sampson argues that he has been prejudiced in his preparation of a defense because he has "lost witnesses" and the witnesses that remain "are unable to recall accurately events of the distant past."  (Doc. No. 1287 at 4-5.) Sampson has not provided any evidence in support of these arguments, and the Court finds his failure to support these unsubstantiated assertions to be significant.  Sampson also asserts that he has been prejudiced because he "has remained incarcerated for over three years" and has lost his home, his possessions, and his opportunity to graduate from school.  (Doc. No. 1287 at 5; Doc. No. 1320 at 2.)  The Court is mindful that Sampson suffered significant actual prejudice to his liberty as a result of his incarceration.  See United States v. Clymer, 25 F.3d 824, 832 (9th Cir. 1994) (stating that because defendant was incarcerated for entire pretrial period, he suffered "significant actual prejudice to his liberty").  However, like the defendant in United States v. Barnes, 159 F.3d 4, 17 (1st Cir. 1998), Sampson has not "behave[d] like a defendant who wanted [his] day in court posthaste."  As Judge Vanaskie remarked in denying one of Sampson's many motions to continue trial, "defense counsel asserts that he anticipates filing additional pre-trial motions, but the time for filing motions has expired in this protracted criminal prosecution. Defendant's latest lawyer has filed motions, and the serial filing of pretrial motions is not to be countenanced."  (Doc. No. 1126 at 1 n.1.)

In addition, the Court finds that the amount of non-excludable delay exceeding the seventy-day limit—18 days as to Counts Nineteen and Twenty-One and 9 days as to Count One—is not so great as to mandate dismissal with prejudice.  See Taylor, 487 U.S. at 340

(stating that "the longer the delay, the greater the presumptive or actual prejudice to the defendant"); see also Barnes, 159 F.3d at 18 (dismissing without prejudice because actual prejudice not shown when seventy-day limit exceeded by 191 non-excludable days); United States v. Cardona-Rivera, 64 F.3d 361, 364 (8th Cir. 1995) (finding that 61 non-excludable days is a significant delay, but not so substantial as to require dismissal with prejudice regardless of other circumstances); Clymer, 25 F.3d at 832 (finding that non-excludable delay of five months "strongly implicates . . . serious concerns").  Further, while the total elapsed time in this case amounts to over three years, the Court finds that there is justification for the extended delay.  See United States v. Stayton, 791 F.2d 17 (2d Cir. 1986) (dismissing an indictment with prejudice after finding that a delay of 23 months was unjustified).  Finally, "[s]ince the government was not culpable in the delay, dismissal with prejudice would do little to deter or advance the administration of the Act."  Cardona-Rivera, 64 F.3d at 364 (noting that "[i]n cases where the government . . . does not regularly disregard the time limits of the Act, dismissal with prejudice is not favored").  Given the lack of bad faith on the part of the Government and the serious nature of the crimes charged, the Court finds that the administration of justice weighs in favor of allowing reprosecution.  See id. at 363-64 ("When the crime is serious, the court should dismiss with prejudice only for a correspondingly serious or prejudicial delay.").

The Supreme Court has stated that "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute and it exposes the prosecution to dismissal on statute of limitations grounds."  Taylor, 487 U.S. at 342; see also Zedner, 547 U.S. at 499 ("[D]ismissal without prejudice . . . imposes some costs on the prosecution and the court, which further encourages compliance.").  After balancing the above

21

factors, and giving serious consideration to the prejudice to Sampson, the Court finds that the indictment should be dismissed without prejudice.

## IV.    CONCLUSION

The Court will grant Sampson's motion to dismiss the indictment.  However, after balancing the factors set out in the Act, the Court concludes that the seriousness of the charged offenses and absence of bad faith on the part of the Government warrant dismissal of the indictment without prejudice.  The Court finds that dismissal with prejudice is not necessary to ensure compliance with the Act, and Sampson has not demonstrated prejudice sufficient to outweigh the factors favoring dismissal without prejudice.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 4:07-CR-389** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **EARL SAMPSON,** | : | |
| Defendant | : | |

**ORDER**

    **NOW**, on this 11th day of April 2011, in consideration of Defendant Earl Sampson's motion to dismiss the indictment (Doc. No. 1287), **IT IS HEREBY ORDERED THAT**:

    1.    Defendant's motion (Doc. No.1287) is **GRANTED**.

    2.    The indictment against Defendant is **DISMISSED WITHOUT PREJUDICE**.

    3.    Defendant's pretrial supervision is **TERMINATED**.

                    S/ Yvette Kane         
                    Yvette Kane, Chief Judge
                    United States District Court
                    Middle District of Pennsylvania